310-495 State Bank of Cherry, affiliated by Bradley Caporella v. CGB Enterprises, Inc. Appellant by Jeffrey B. McClain The case actually involves a federal statute, and as far as we're concerned, we can make an in-depth, lengthy analysis of some of the issues. But we think and we propose that this court take basically a simple route to a resolution that reverses the judgment and render judgment for CGB Enterprises in this court. What we're operating under, and it's in our appendix that's in the complaint, are these two notices of security interests. All that's missing is the county, right? Well, all that's missing is the county, and basically our argument is, first of all, that, again, from a simplistic approach, the notices say that they are given pursuant to the Food Security Act of 1985. That's the federal statute. There's no reference to the notice being given under Illinois law in any way, shape, or form. Actually, whoever put this form together actually puts this big blank where you're supposed to have the property description in the county, and it's not there. Under the Food Security Act, there's one Court of Appeals decision. That's the Eighth Circuit case. They say, after a thorough analysis, that strict compliance is what Congress intended. And if you look at the statute, maybe on its face it looks like you kind of shrug your shoulders at it. The way the statute is set up is the lender really can't ever prevail against a buyer unless they follow all the steps in Section 1631E. And what the Eighth Circuit did was they said, we're not going with substantial compliance. We're going with strict compliance. That's what we think Congress intended. They actually had this Kansas opinion, which we've dissected in the briefs and can talk about in more detail if desired. They had that case. That was the Kansas case that actually was a state court case involving not a Kansas statute but the federal statute. And they looked at it, and they said, no, substantial compliance is not what's intended. The reason why they did this, the Act is set up so that you have what are called central filings or direct filings of these notices of security interest. Kansas and Illinois do not have this central filing. Everything has to be done by direct notice in a case of this kind. What the Eighth Circuit did was they looked, and they said- To whom does the direct notice go to? To whom does the direct notice go to? The direct notice would go to, as it says here, somebody that the debtor has named as a potential buyer, commission, merchant, or selling agent. So really the person in the elevator that's holding the grain for the debtor. And it would be also, to take it one step further, it would be the entity that in a case like this could be forced to pay. CGB already bought grain. They already paid the farmer. Now the plaintiff comes along and says, well, now we have to pay the farmer. You've got to pay us. But they did have those two notices, didn't they? Oh, they had them, sure. So they knew that Bank of Cherry had a lien interest through an agreement with the depositor of the grain and the farmer. As did the entity in our position in the Eighth Circuit case. And the point is, and I'm glad I wanted to touch upon that, knowledge really is not the issue. If you look at 1631, it says right in it, and even the Illinois codification of it refers to the fact that it says right in here, purchase is free of security interest, even though the security interest is perfected and the buyer knows of the existence of such interest. So knowledge has nothing to do with it. I know this may sound technical, but the Eighth Circuit is the only federal court case that has said you adopt, you follow strict compliance. Certainly if the Eighth Circuit had said you follow substantial compliance, we wouldn't be here. But the Eighth Circuit did say strict compliance, and we're dealing with that federal statute. Where did the Fourth District go along with it? Well, the Fourth District didn't have the wisdom of the Eighth Circuit, for one thing, which I know you chuckle, but here's my points. The Fourth District even said no authority was cited to us while we're citing you authority. We all know that you judges are not bound by what the Fourth District, if you think that they were wrong or the case can be distinguished, obviously you can make your ruling. There was no mention of the Food Security Act in the opinion. That notice didn't say anything about the Food Security Act. That case well predated the Eighth Circuit case. There's authority we cite in our brief for the notion that because the statute uses the words that Congress wanted to occupy the field notwithstanding any state law, we think that that would mean notwithstanding any case law. I think there's authority for that. It's not just statutes that can be preempted. Court decisions are preempted. So we don't think the Fourth District case even is alive as far as we're concerned because it's been preempted. The other thing is when Illinois did codify the federal statute, our view is that when they codified the statute, they bring with it not just the language of the statute, but whatever the federal courts of appeals or the Supreme Court, if there is a decision, bring to bear on that case as well. We also think- So there's no room then in your analysis for common law state decisions to affect the outcome of this case? I would say, I guess I'm not totally sure what you mean, but in other words- Well, I mean- Because that case, the Fourth District was dealing with one statute that they hadn't seen the language and hadn't seen the federal court of appeals- Well, let's ignore what the federal courts said. Let's just look at the fact that we do have the Food Security Act. And doesn't the Food Security Act say something that the states, do you comply with the states, something about the states' forms or is it- No, it doesn't say it. In fact, the only thing it does say is it's not withstanding any state law. So it's our view that, and this is where the law gets a little bit murky. Our position to follow up my simple approach is they didn't put the county in, the Eighth Circuit said the county has to be in, and that there's case law in Illinois that says when a federal court of appeals has interpreted a statute, you're bound by it or controlled by it. Now, I know the cases, as a trial judge said, the cases seem to be kind of a mishmash. Now, some say binding, some say controlling, some say merely persuasive. Even the Illinois Supreme Court, which may have pulled back a little bit, they use the words when you have a federal statute, you want to have a uniform application. If you can, you want to follow the federal courts, and it seems like the state of the law, in my view, is that at least at this point, the rule is that state appellate and trial courts are bound by federal court decisions on federal statutes unless there's a split of authority. Obviously, there's going to be a split of authority where you have to pick one case over the other, and you decide that one case is wrong. That's what the spritzma case, some of the cases that we talk about. What was the intent of Congress in this act, or our legislature for that matter? The intent was to, for one thing, there was, historically, you had the idea that there was what's called a farm market exception, where anything other than farm products, the buyer would take prevailing right over the lender, but that was not in place for farm products. So the first and the main thing, I guess, they did was to obviate that and get rid of the farm products exception. The intent of Congress, as the Court of Appeals said, is they want to avoid double payment. If there's a doubt, you should rule in favor of the buyer so you don't have double payment. What you're saying is that before, there was a preference to the lender? Right, and they changed that. Right, so we put the burden on the lender to be specific and to follow this, comply, if they are going to be able to prevail against the buyer. Correct, and that's what they say. They say you don't, the way the structure of this is set up is in Section D of Section 1631, they're basically saying, lender, you don't have any rights unless you jump through all the hoops in subsection E. If you don't, you lose. And the idea was, and what the Eighth Circuit seemed to be drawing upon is, it's a lot easier for a buyer who gets a notice to say, well, they have to strictly comply. If everything that's in here, everything that's in the statute is not in here, I know that because there's not been strict compliance. If everything's not in, there's no good notice. But if you get something where some of it is in, but maybe other parts are in, then it leads the buyer to have to guess or speculate and bring their lawyer into the picture. Is this substantial compliance? Isn't it? Which ones are and which ones aren't? Are we going to have a whole body of case law developed where if the county is missing and the street address is wrong, that's no good. But the amount and you don't say beans and you say wheat and it was really beans and it wasn't wheat. How do we know? So it has to be strict compliance. That's what the Eighth Circuit is saying and argues that you're actually bound by that ruling. The trial judge was bound by that ruling. But even if you aren't bound by it and want to take a look afresh, I don't think the Fourth District, they didn't deal with any of these arguments, frankly. They were really only arguing, it seemed to me, if you read that Toledo case about some separate financing document. The whole idea of putting in the county is arguably that this, we don't, corn can come from any county. Is that correct? Right. Well, the idea of the statute and what the Court of Appeals says, you have to put, if you're in more than one county, you have to put more than one county. The idea being if you get the notice of security interest, you have to know, you want to know the county because that's where you go to see if the UCC, if the financing statement is on file. And if you don't know that, you know, how many counties do you have to go to? If you go to one and there's nothing there, you have to go to the second one.  Near as I can tell, that's why the importance of the county reference was put in. That it can't just be Joe lives at such street address and you're to assume that that's all his products are coming out of that particular county. Because as we well know, there's people that have street addresses that live in one place and farm in multiple counties. So- Mr. Reed, I have a question. Yes, ma'am. I may be wrong. My understanding of the statute, the federal statute, is that a person who buys farm products takes subject to a lien by the bank, even if they don't know about the lien. So the bank is getting an advantage over a buyer who doesn't have complete information. And the statute says if the bank is going to be able to enforce its lien, it has to prove that it strictly complied with the form of the notice. That's exactly, I think, the point here. So there's a benefit being given to the bank, but they're saying you only get that benefit if you strictly comply with all of the notice. I couldn't have said it any better myself. That's the crux of our whole position here, and it's supported by the only federal court of appeals. Does the statute say strict compliance? It doesn't say strict compliance. No. It doesn't say substantial. Does it have to be strict compliance or can it be substantial to get that preference? Right. And what the Eighth Circuit did, they pulled the language out of the part from central filings, where central filings could be done as long as they weren't seriously misleading. That's what became the buzzwords for substantial compliance. And the idea was in the central filings, and here's where I think the Eighth Circuit had it right. That Kansas case, I think, was just an abomination because of all the different statutory construction rules they miscombobulated. But the point is the statute is set up where the direct notice actually is tougher than the central filings. The Kansas case made it sound like, well, we're just going to assume that the central filing system would require more precise information. But that's the exact opposite of that. If you look at the statute and read those cases in detail, that's what they say. And the Eighth Circuit, I think, certainly knows more about ruling on congressional legislation. They know what the federal statutory construction rules. In our view, they had the benefit of... You have one minute. Yes, sir. They certainly shouldn't be the ones charged with having the most knowledge of how federal statutes are interpreted. They applied the rules correctly. Strict compliance is strict compliance. In this case, the plaintiff didn't. If you read the transcripts of the arguments on the motion to dismiss, the judge basically said everything that I said basically was right. But he felt bound by this Fourth District case. And in our view, the Fourth District case is outdated. And I submit that you should take a look at the law separate from that old ruling with the Eighth Circuit case on the books. Thank you. Thank you, Mr. Riva. Mr. Paparella. Thank you, Your Honors. May it please the Court. Brad Paparella on behalf of the Plaintiff's State Bank Insurance. Your Honor, in this particular matter, respectfully, the issue, in my opinion, is whether or not we're looking at strict compliance under the Eighth Circuit opinion or substantial compliance under the Fourth District opinion here. For the following reasons, I think the Eighth Circuit case is off-base. It certainly is not required by this particular Court, by Your Honors, to follow the ruling of the Eighth Circuit. Factually, the case in the Eighth Circuit is a little different from the case that we have here. One of the points I wanted to make particularly is that the Eighth Circuit case, I believe, is dealing with central filing. It talks about the direct filing exceptions. There, obviously, the Court found that there needed to be strict compliance. But the difference here versus there is that in this particular case, the notice, the notice that was sent to the elevator, includes additional language which indicates, describe farm products wherever located, and it's not limited to those on the above property. I can't dispute the fact, as Mr. Riley had the two notices that were sent, that the area where the county would be filled in is blank. It is what it is. I can't, obviously, change that fact, Your Honors. But my perspective on this is that there is substantial compliance because that's the only thing that's blank. They're certainly on notice. The elevator was certainly on notice in the two consecutive years of the liens there, and it's further indicated by their behavior in listing, in the second year, listing the bank on the drafts. Now, the drafts were ultimately executed only by one party, and that's, of course, an issue beyond here. But I don't think it's for the buyer here, when they've made behavior and they've acquiesced to that, they've shown that they had notice of it from an equity standpoint to try to get out from under their responsibilities, for lack of a better way to say it, due to the fact of, you know, now we're going to argue there should be strict compliance as opposed to substantial compliance. Let me ask you what you think the intent of the act is. I'm sorry, Your Honor? Let me ask you what you think the intent of the act is, congressional intent or legislative intent. Well, generally speaking, I believe that the intent of the act is to protect the buyers from double payment. I think that that's elicited throughout the various decisions that were discussed both by myself and Mr. Riva in this matter. But the protection that's extended to the buyers in this particular case, respectfully, Your Honor, I think it is pushed to the side by the fact that they were aware of the lien. And that's really the crux of it. But that's true of any of these notices that actually arrive at the offices of the seller, right? Well, I would agree with that. I mean, the issue is, is substantial notice sufficient or does it have to be? Spot on or directly on point in every particular issue. Of course, that's exactly the issue here. The fourth district case that was decided here, I don't think, you know, factually, it's nearly identical to the case that we have right here. And even in the ruling and in the consideration that Judge Heddle made at the trial court level in this matter, he even went above and beyond, in my opinion, by trying to find a copy of the actual notice down in the Effingham Clay case. He wasn't able to find it. But the notice there, you know, it's just like here. The notice there doesn't set forth the county. Everything else is there. I think what he was looking for was whether or not the additional language of the described farm products were ever located, and it's not limited to those on the above property, if that was included in the fourth district case or not. And ultimately, he wasn't able to find that. Was that fourth district case construing provisions in the Uniform Commercial Code?  Well, I think what the fourth district case is looking at is the codification of the Food Securities Act under the 810 ILCS. And initially, well, now the sections are 59320F and 59320.1. So I think it addresses. And it's identical? The language, I would argue, is fairly close. Okay, so fairly close to the federal act, right? Yes, Your Honor. Okay, so now we get into this problem of who's interpreted law on that for that? State or federal? Well, if we look at the ruling in the fourth district case, we look at what the intent or what the idea behind the whole substantial compliance process is. And I believe the intent of substantial compliance is to place the buyer in sufficient notice of the violation. Right, we know what substantial compliance is. We know what they held. But now we've got an Eighth Circuit case that says it's strict compliance. I mean, you're saying the only distinguishing feature is that they're dealing with the central filing system in Kansas, whereas we're direct notice in this state? Well, I think that's one of the differences. Okay, so play with that. Why is that significant? Why did we say that that's what the Eighth Circuit's only addressing? Well, I think the central filing system is there to protect other secured creditors as opposed to just the buyer itself, which is what you have in the direct filing system. I mean, does under the central filing, does there need to be more protection in a state that has central filing as opposed to a direct notice state? Because that's what we're really talking about here is protection, right? I agree. We are talking about protection. And respectfully, Your Honor, I think that a central filing state doesn't provide as much protection because you have questions as to whether or not the buyer is on specific notice. And as in here, we have specific notice, albeit missing accounting. There is specific notice to the buyer. Because that's who we're trying to protect, right? I would agree with that, yes, Your Honor. Okay, so then you would say logically or reasonably or policy-wise, substantial would not be as harmful to the buyer as under a central system. Is that what you're saying? Yes, Your Honor. The Eighth Circuit Court, as I indicated earlier, should just be held to be persuasive and not binding upon Your Honors in this particular matter. Why, though? I mean, because it dealt with central filing as opposed to direct notice? That and the fact that there's no indication. Herein, we have that additional language wherever the crops are located. It's more of a, I would argue it's more of a catch-all. It allows for the fact that, and I think it's common knowledge that there's a good deal of farmers who do farm in multiple counties. And I think that that is part of the reasoning. Okay, opposing counsel, I ask this question. What's the significance of putting down the county? And he was trying to tell me, well, that tells the buyer where to go look for something. What is it the buyer's going to go look for? Well, the buyer can look if there's other encumbrances on the particular commodity. By going to the county records? Correct, Your Honor. And you're saying this general language up above on the form is sufficient to tell the buyer what? Well, I think it's sufficient to tell the buyer that not only are we talking about any products in this specific county, which would have been allowed had the blank been filled in, but there's a potential for other, there's a potential for there to be other securities pledged there. And that further investigation should be done before payments are made. I mean, I guess what I'm getting at is questions need to be asked. Herein, the elevator is aware of the lien. They make payments consistent with the lien for a year. And I would argue, and unless there's further questions, I'll close shortly, that strict compliance is draconian. What it's doing is requiring every I dotted, every T crossed, which allows a buyer, in this case, the elevator, the opportunity to escape their own negligent actions by avoiding or not paying attention to the notice of lien that was sent on two occasions. And for that reason, I'd ask Your Honors to affirm the ruling of Judge Howell in this matter. Are there any other questions? Thank you, Your Honors. Is it Riva or Riva? Riva. Real briefly, it sounds like they're making an argument that you can, where the form says to list the property and the county where it's blank, that then you can just check the box to say property wherever located. Why would Congress have sanctioned that type of form being sufficient if they give this whole list of things, county, property description, right in the statute? It seems to us that just checking a box doesn't cure the omission that's patent on the face of the document. Certainly, along the lines of what we just talked about, wherever located. But now, what do we have to do? Go to all 102 counties in the state to look up the information that the opposing counsel concedes is of importance to? Of course, a buyer doesn't have to. Of course, a buyer isn't forced to buy anything, either. If he's got that document, he says, hey, wait a minute, I'm buying a pig and a poultry. Well, I think the point is still that we should go with substantial compliance. And just because they checked a box, by checking this box, they're basically, as far as I'm concerned, writing the federal statute out of existence. The other point I want to make is. But you've got to admit, the buyer isn't forced to buy this grain. No. There's plenty of grain around. Anyone is forced to do anything. Right. So, I mean, in the statute, it's to protect whom? Buyer. Buyer. Which is us. Right. So the buyer is on notice that, hey, this is encumbered grain. I don't know. I don't want to pay the farmer here because I don't know who else I might have to pay. Well, I think that's the whole point of meeting a strict compliance test. I want to make a mention. I think opposing counsel is an error. That Eighth Circuit case is a direct notice case. And it says right on here that Arkansas is the state involved, that they don't have a central filing system. So, all the Eighth Circuit was doing in this opinion was drawing upon the differences between central filing and direct filing to show that the Kansas court was wrong by taking the view that central filing would be easier and, or harder, rather. So, in any event, I think the Eighth Circuit is on all fours, and it actually is a direct notice case. It says, I've just got a slip opinion, but it's the paragraph that begins, Farm Fresh, Farm Credit Agree, Arkansas law applies. Arkansas has not established a central filing system. Again, content is the key issue here. It's not whether we knew or didn't know. And I think opposing counsel has admitted that the key here is that the statute is set out to protect the buyer, and substantial compliance as a test really doesn't protect the buyer as much as a strict compliance test would. And unless the court has any questions, I think we've exhausted the Food Security Act of 1985. Okay. You've both done a great job. Thank you very much for your argument today. We will take this matter under advisement.